# APPENDIX 1



1 of 1 DOCUMENT

ERIK JOHNSON and others similarly situated, Plaintiffs, v. ECT CONTRACTING, LLC, Defendant. BRETT BAXTER and LARRY ALSUP, Intervenors.

No. 3:09-0130

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

2010 U.S. Dist. LEXIS 14237

February 18, 2010, Filed

**COUNSEL:** [*1] For Erik Johnson, and others similarly situated, Plaintiff: Clinton H. Scott, Justin S. Gilbert, Michael L. Russell, LEAD ATTORNEYS, Gilbert Russell McWherter PLC, Jackson, TN.

For ECT Contracting, LLC, Defendant: Joseph Y. Longmire, Jr., LEAD ATTORNEY, Hendersonville, TN; Kevin H. Sharp, LEAD ATTORNEY, Drescher & Sharp, P.C., Nashville, TN.

For Brett Baxter, Larry Alsup, Intervenor Plaintiffs: Kerry E. Knox, Thomas H. Castelli, LEAD ATTORNEYS, Castelli & Knox, LLP, Murfreesboro, TN; Clinton H. Scott, Gilbert Russell McWherter PLC, Jackson, TN.

**JUDGES:** ROBERT L. ECHOLS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ROBERT L. ECHOLS

**OPINION**

*MEMORANDUM*

Plaintiff Erik Johnson and Intervenor-Plaintiffs Brett Baxter and Larry Alsup ("collectively Plaintiffs") filed a Motion For Approval Of *29 U.S.C. § 216(b)* Notice And Consent Forms And To Order Disclosure Of Current And Former Employees (Docket Entry No. 35), to which Defendant ECT Contracting, LLC ("ECT") filed a response in opposition (Docket Entry No. 40), and Plaintiffs filed a reply (Docket Entry No. 41).

*I. FACTUAL BACKGROUND*

Plaintiffs were formerly employed by ECT to install and service Direct TV satellite dishes and related components for ECT customers. Plaintiffs filed [*2] this action against ECT for themselves and on behalf of all similarly-situated present and former employees for violation of the minimum wage and overtime pay provisions of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 206 & 207*. Specifically, Plaintiffs claim that (1) ECT improperly classified them as "independent contractors"; (2) ECT required Plaintiffs to perform work in excess of forty (40) hours a week without paying overtime compensation at a rate not less than one and one-half times the regular rate of pay; and (3) on occasion Defendant failed to pay Plaintiffs and other similarly situated employees at all, violating the minimum wage provisions of the FLSA. Plaintiffs seek permission to proceed by collective action and to give notice to all similarly situated employees and former employees who worked for ECT in the three years before this suit was filed and who have been characterized by ECT as "independent contractors." Plaintiffs ultimately request a declaratory judgment that ECT violated the FLSA and that ECT's violation was willful. Plaintiffs also seek damages for unpaid overtime and minimum wage compensation, liquidated damages, attorney's fees, costs, and other [*3] relief. (Docket Entry No. 33, Amended Complaint.)

Plaintiffs provided their own affidavits and one affidavit signed by Yonas Neguse, a former employee of ECT. (Docket Entry No. 36-5.) These affidavits are nearly identical in form except for differences in the number of hours each Plaintiff worked in a week for

ETC. The Plaintiffs attest they were paid by the job and did not receive 1.5 times their regular rate of pay when they worked over 40 hours in a work week, even though they frequently worked in excess of 40 hours. Plaintiff Johnson generally worked a minimum of 40 hours per week and often worked as many as 60 hours per week for ETC; Plaintiff Baxter worked approximately 50+ hours per week; Plaintiff Larry Alsup worked approximately 70 hours per week; and non-party Neguse worked approximately 50 hours per week. (Docket Entry No. 36-5 at 2 P 3; at 5 P 3; at 8 P 3; & at 11 P 3.)

According to the affiants, ECT did not allow them to rely on their independent judgment in determining which tools were necessary to complete the jobs assigned. Instead, ECT gave the affiants specific instructions as to which tools they were to use on the job. Although the affiants did have to buy some of [*4] their own tools, ECT provided them with the equipment that was passed on to the customer, including satellite dishes, wiring, and related components.

The affiants state that ECT exercised substantial control over their work. The affiants were required to attend a ten-day to two-week training course before they could begin working for ECT, and they received no compensation during the training period. The affiants did not schedule their own appointments; rather, the appointments were scheduled by ETC and the affiants were paid a set rate for each appointment based on the service the scheduled customer needed. Each affiant received a three-ring binder from ECT containing very detailed and specific instructions for performing their jobs and for personal grooming.[1] The affiants state they did not have the opportunity for profit or loss based on their work or any type of business management. They did not engage in open market competition with others. They worked exclusively for ECT, completed the jobs assigned to them, and did not have the opportunity to work for others due to the hours required of them by ETC.

   1   Although each affidavit states that a copy of the instructions is attached to [*5] the affidavit, no such instructions were provided to the Court for review.

Further, affiants state they did not exercise independent judgment regarding business organization and operation. They did not bill clients, collect unpaid bills, engage in marketing of services, or take any other steps toward managing the business operation.

Finally, the affiants state they have spoken with other ECT contractors and found that the affiants' own experiences, job duties, training, and pay practices are similar to other ECT employees who are classified as "independent contractors." ECT did not produce any affidavits to contradict Plaintiffs' affidavits.

## II. ANALYSIS

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing[.]" *29 U.S.C. § 216(b)*. Unlike typical class actions under *Federal Rule of Civil Procedure 23*, a collective action under the FLSA requires individuals to opt in to the action rather than opt out. *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 167-168, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*; [*6] *Douglas v. GE Energy Reuter Stokes, 2007 U.S. Dist. LEXIS 32449, 2007 WL 1341779 at *2 (N.D. Ohio 2007)*.

Plaintiffs who seek certification of a collective action under the FLSA bear the burden to establish that they and the class they wish to represent are similarly situated, not identical. *O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 584 (6th Cir. 2009)*; *Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546-547 (6th Cir. 2006)*. To apprise other potential class members of the pending action, representative plaintiffs typically seek to have court-supervised notice issued. "[N]otice to prospective co-plaintiffs should be authorized if the named plaintiff 'demonstrates that she is similarly situated to the other employees she seeks to notify of the pendency of the action.'" *Id.* (citation omitted). This requires a "modest factual showing" sufficient to demonstrate that the Plaintiffs and the potential plaintiff class together were victims of a common policy or plan that violated the law; this showing is generally "fairly lenient" and typically results in conditional certification of a representative class. *Comer, 454 F.3d at 547*; *Neary v. Metropolitan Property and Cas. Ins. Co., 517 F.Supp.2d 606, 618 (D.Conn. 2007)*.

[*7] Defendant contends that the named Plaintiffs have failed to make a colorable showing of the existence of a class of similarly situated independent contractors who have worked uncompensated overtime as the result of a single plan or policy imposed by ETC. For this reason, Defendant urges the Court not to authorize this case to proceed as a collective action or alternatively, to allow a period of discovery on the matter before ruling on Plaintiffs' motion. Defendants rely primarily on district court cases from out of the circuit that refused to permit collective FLSA actions to proceed because the plaintiffs produced insufficient evidence to show the existence of plaintiff classes and that members of the classes wanted to join the suits. *See e.g. West v. Border Foods, Inc., 2006 U.S. Dist. LEXIS 96963, 2006 WL 1892527 (D. Minn. 2006)*; *Rodgers v. CVS Pharmacy, Inc., 2006 U.S.*

*Dist. LEXIS 23272, 2006 WL 752831 (M.D. Fla. 2006)*; *Basco v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709 (E.D. La. 2004)*; *Mackenzie v. Kindred Hosps. East, LLC, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003)*; *Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991)*.

Recently, in *O'Brien, 575 F.3d at 584*, the Sixth Circuit stated that [*8] "[s]howing a 'unified policy' of violations is not required[.]" Nonetheless, under the facts of that case, the panel determined that the plaintiffs were similarly situated to potential opt-in plaintiffs "because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id. at 585*. The court observed: "We do not mean to require that all collective actions under *§ 216(b)* be unified by common theories of defendants' statutory violations; however, this is one situation where a group of employees is similarly situated." *Id.*

As in *O'Brien,* the Court concludes that the Plaintiffs in this case have presented sufficient proof that their claims are unified by common theories of ECT's alleged statutory violations to permit Plaintiffs to proceed with a collective action and provide notice to potential opt-in plaintiffs. Only one Plaintiff, Erik Johnson, initially filed the case. Later, two additional Plaintiffs, Brett Baxter and Larry Alsup, intervened in the case. Plaintiffs also produced the affidavit of a non-party, Yonas Neguse. Each Plaintiff and Neguse avers that he has spoken with other [*9] ECT independent contractor employees and found that his own experience, job duties, training, and pay practices are similar to other ECT independent contractor employees. Thus, the Plaintiffs and Neguse personally obtained direct knowledge that there are other similarly situated ECT employees who would be potential members of the class. *See Sniffen v. Spectrum Indus. Servs., 2007 U.S. Dist. LEXIS 35206, 2007 WL 1341772 at * 2 (S.D. Ohio 2007)*(even under the more restrictive standard of a "modest factual showing," the "affidavits of the two named plaintiffs [show] that potential class members are similarly situated"). Defendants have not produced any affidavits to suggest that there is no factual basis for finding a potential collective class exists.

Under Sixth Circuit law, the "modest factual showing" the Plaintiffs are required to make is "fairly lenient." *Comer, 454 F.3d at 547*. Therefore, the Court determines under the facts presented that conditional certification of a representative class should be allowed so that potential plaintiffs will have an opportunity to decide whether to opt in to join the suit.

### III. *CONCLUSION*

For the reasons stated, Plaintiffs' Motion For Approval Of *29 U.S.C. § 216(b)* Notice And [*10] Consent Forms And To Order Disclosure Of Current And Former Employees (Docket Entry No. 35) will be granted. The procedure to be followed in proceeding with a collective action will be set out in an Order to accompany this Memorandum.

An appropriate Order will be entered.

/s/ Robert L. Echols

ROBERT L. ECHOLS

UNITED STATES DISTRICT JUDGE